**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **IVAN OJEDA, JOSE RODRIGUEZ-ORTIZ, EDUARDO RIVAS FERNANDEZ, JUAN GERENA, IVAN BURGOS-TORRES, EFRAIN HERNANDEZ-ADORNO AND MUGUEL MILLET-MORALES, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED,**<br><br>        **Plaintiffs,**<br><br>**v.**<br><br>**LOUIS BERGER GROUP (DOMESTIC), INC., KENNETT CONSULTING, LLC, KALLBERG INDUSTRIES, LLC, BLUESOURCE, LLC, AUTOMATED CONTROLS AND POWER LLC/ACP LLC, H.P. SERVICES, CORP., ABLE INNOVATIONS INC. d/b/a HELSEL'S AUTOMOTIVE, SUNCOAST RESOURCES, INC., LMD AND ASSC., LLC, AND DK&J ENTERPRISES, INC.,**<br><br>        **Defendants.** | Civ. No. 18-17233 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

      This is a dispute arising under the Fair Labor Standards Act in which the plaintiffs seek to recover alleged unpaid overtime wages from the defendants. After Hurricanes Irma and Maria devastated Puerto Rico and the Virgin Islands, FEMA and other governmental entities implemented programs to provide for aid and repairs. Louis Berger Group (Domestic), Inc. ("Louis Berger") was awarded multiple contracts for power generation and repair pursuant to those programs, and subcontracted its obligations under those

contracts to the other defendants. The subcontractor defendants then hired the plaintiffs and allegedly misclassified them as independent contractors.

Many of the defendants have independently filed motions to dismiss. Here, I consider

- Motions to dismiss for failure to state a claim filed by Sun Coast Resources, Inc. ("Sun Coast"), (DE 253-1) and H.P. Services Corp. ("HP"), (DE 290-3)
- Motions to dismiss for lack of personal jurisdiction filed by LMD and Assc., LLC ("LMD"), (DE 252), Kallberg Industries, LLC ("Kallberg"), (DE 250), Bluesource, LLC ("Bluesource"), (DE 244), and HP (DE 290-3) (together, "the HLKB defendants")
- Plaintiffs' motion to transfer venue (DE 261), filed in response to the motion of Defendant Able Innovations, Inc. d/b/a Helsel's Automotive, to dismiss for lack of personal jurisdiction (DE 254).

For the reasons set forth below, the motions of Sun Coast and HP motions to dismiss for failure to state a claim are **DENIED,** the HLKB defendants' motions to dismiss for lack of personal jurisdiction are **GRANTED**, and the motion to transfer is **GRANTED**.

## I.    Background

The underlying allegations in this matter are relatively straightforward. Defendant Louis Berger, a New Jersey company, received contracts from various federal agencies including FEMA and the Army Corp of Engineers to assist in perform repairs in Puerto Rico and the Virgin Islands in the wake of Hurricanes Irma and Maria. (2AC ¶¶ 66–68.) Louis Berger subcontracted its obligations under the contract to all of the remaining defendants. (*Id.* ¶ 69.) The defendants hired workers in Puerto Rico to complete their obligations under the contract. For example, defendants Kallberg Industries, LLC and Kennett Consulting, LLC, hired plaintiff Ivan Ojeda to work as a diesel mechanic. (*Id.* ¶¶ 9, 70.) The defendants allegedly paid Ojeda and the other

workers flat amounts each day and failed to pay them overtime, despite their working more than 40 hours in a week. (*See, e.g., id.* ¶ 37.)

## II.   Motions to Dismiss[1]

### A. HP and Sun Coast Motions to Dismiss for Failure to State a Claim

Defendants HP and Sun Coast are among the subcontractors described above. They move under Rule 12(b)(6) to dismiss the complaint for failure to state a claim, primarily on the ground that the plaintiffs have failed to adequately allege an employer-employee relationship between themselves and these two defendants.[2]

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (Rule 8 "requires a 'showing' rather than a blanket assertion of an entitlement to relief." (citation omitted)). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Twombly*, 550 U.S. at 570; *see also West Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013).[3]

---

[1]      Citations to the record will be abbreviated as follows:

"DE __" refers to the docket entry numbers in this case.

"2AC" refers to the Second Amended Complaint, located at DE 235.

[2]      HP also moves to dismiss for lack of personal jurisdiction, *see infra.* Sun Coast, however, does not. The HP and Sun Coast Rule 12(b)(6) motions are substantially parallel, and counsel for the plaintiffs responds to them in joint fashion. I therefore highlight the discussion as it relates to Sun Coast, relegating the discussion regarding HP to the footnotes. Because I later will grant HP's motion to dismiss for lack of personal jurisdiction, the analysis of its Rule 12(b)(6) motion is included as an alternative ground, and because it bears on the contentions of Suncoast.

[3]      Plaintiffs assert that they "need not plead specific facts and must only 'give [Defendants] fair notice of what . . . the claim is and the grounds upon which it rests.'"

That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Id.*

Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Science Products, Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *New Jersey Carpenters & the Trustees Thereof v. Tishman Const. Corp. of New Jersey*, 760 F.3d 297, 302 (3d Cir. 2014).

Whether a complaint states a claim depends, of course, on the allegations in relation to the substantive elements of the claim. In the FLSA context, courts first ask whether the plaintiff has alleged an employer-employee relationship. *Federman v. Bank of America, N.A.*, 2014 WL 12774688 at *4 (D.N.J. Dec. 16, 2014). This is determined according to the "economic realities" of the relationship between putative employer and employee, evaluated through the following non-exclusive factors: "(1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes." *In re Enterprise Rent-A-Car Wage & Hour Employment Practices*

---

(DE 262 at 2.) That is not the applicable standard, and has not been since the Supreme Court's decisions in *Twombly* and *Iqbal*.

*Litigation,* 683 F.3d 462, 467–68 (3d Cir. 2012).[4] These four factors (which I will call the "*Enterprise* factors") allow for the possibility of "joint employment," so "[u]ltimate control is not necessarily required to find an employer-employee relationship under the FLSA, and even 'indirect' control may be sufficient. In other words, the alleged employer must exercise 'significant control.'" *Id.* at 648.[5]

Assuming an employer-employee relationship exists, courts then ask whether the plaintiff has plausibly alleged that "(1) the defendant was 'engaged in commerce' as that phrase is defined by the FLSA; (2) he was an 'employee' as defined by the FLSA; and (3) he worked more than forty hours in a week but was not paid overtime compensation for the hours worked in excess of forty." *Federman*, 2014 WL 12774688 at *7 (quoting *Attanasio v. Cmty. Health Sys.*, 2011 WL 5008363 at *3 (M.D. Pa. Oct. 20, 2011)). A plaintiff must allege "[forty] hours of work in a given workweek as well as some uncompensated time in

---

[4] HP relies on a six-part test set out in *Safarian v. Am. DG Energy Inc.*, which directs me to consider the employer's right to control the employee's behavior, the alleged employee's ability for profit and loss depending upon his managerial skill, the employee's investment in equipment or materials required for his task, whether the service requires a special skill, the permanence of the working relationship, and whether the service rendered is an integral part of the alleged employer's business. 622 Fed. Appx. 149, 151 (3d Cir. 2015). Because *In re Enterprise* made clear that its factors were non-exclusive, I see no reason that the additional *Safarin* factors could not also be relevant here. 683 F.3d at 469. I do not find, however, that they make any difference to my conclusion that plaintiffs have adequately alleged an employer-employee relationship. *See Tae In Kim v. Dongbu Tour & Travel, Inc.*, 2012 WL 12903881 at *2 (D.N.J. June 6, 2012) (pleading focused on right to control is sufficient to state plausible claim of employment under FLSA); *see also Harris v. Scriptfleet*, 2011 WL 6072020 at *2 (D.N.J. Dec. 6, 2011) (same).

[5] Plaintiffs cite *Sida v. Pintura*, 2018 WL 6258604 at *2 (W.D. Pa. Nov. 30, 2018) for the far-too-broad proposition that *In re Enterprise* does not set forth the test for whether joint employment has been pled. (Opp at 5.) The Court in *Sida* merely noted that the *In re Enterprise* factors are not exhaustive and need not all be present in order to find an employment relationship. 2018 WL 6258604 at *2 ("Defendants slightly misstate the rule in *Enterprise* insofar as a plaintiff, in establishing a joint employment relationship, is not required to plead facts that would satisfy *each* of the factors.") (emphasis added).

excess of the [forty] hours." *Id.* (quoting *Davis v. Abington Mem. Hosp.*, 765 F.3d 236, 241–42 (3d Cir. 2014)). At the complaint stage, however, the plaintiff need not "identify the exact dates and times that she worked overtime"; it is sufficient to allege merely that "she 'typically' worked forty hours per week, worked extra hours during such a forty-hour week, and was not compensated for extra hours beyond forty hours he or she worked during one or more of those forty-hour weeks." *Id.* (quoting *Davis*, 765 F.3d at 243).[6]

The Second Amended Complaint names only one plaintiff/employee who allegedly worked for Suncoast, Ivan Burgos-Torres. (2AC ¶¶ 25–28.) Plaintiffs allege that Mr. Burgos-Torres was paid a flat rate of $150 per day regardless of the number of hours he worked; that he customarily worked 12 or more hours a day; that he consistently worked over 84 hours a week; and that he was not paid overtime. (*Id.* ¶¶ 27–28.) These allegations are sufficient to state a claim by Mr. Burgos-Torres against Sun Coast.[7]

Defendants attack the very basis of the claims, however, by arguing that the complaint fails to allege facts sufficient to establish that these two plaintiffs were employees of Suncoast and HP. As for Mr. Burgos-Torres, Sun Coast claims that the Second Amended Complaint merely asserts that he worked for "defendants," not Sun Coast, and states nothing about whether Sun Coast supervised his actions, paid him, or had the ability to hire or fire him. To an extent, they have a point: the Second Amended Complaint alleges that Mr. Burgos-Torres "worked for Defendants in Puerto Rico from November 2017 to August 2018," was "hired as a diesel attendant and assistant driver," and

---

[6] Sun Coast appeared in its motion to dismiss to be asserting that plaintiffs are obligated to prove "primary" control over Burgos-Torres. (DE 253-1 at 14.) In their reply they abandon this assertion, with good reason, as that is not the test.

[7] The Second Amended Complaint also names Mr. Rodriguez-Ortiz as an employee of HP. It alleges that he was paid a flat day-rate which varied between $200 and $250, but which did not track the number of hours he worked. (*Id.* ¶ 16.) The complaint alleges that he worked 12 or more hours a day and over 60 hours a week, and was not paid overtime. (*Id.* ¶ 17.) By the same reasoning, these allegations would be sufficient to state a claim by Mr. Rodriguez-Ortiz against HP.

"performed work for Kallberg, Kennett, Sun Coast, and Louis Berger," including "fuel[ing] the vehicles rented by Louis Berger for Kallberg, Louis Berger, ACP and Bluesource employees" and "rid[ing] with Sun Coast drivers guiding them by GPS to the generators that needed to be refilled." (*Id.* ¶ 26.) None of those allegations give any insight into Mr. Burgos-Torres's relationship with Sun Coast.[8]

Plaintiffs acknowledge that these allegations do not directly set forth an employer-employee relationship between either plaintiff and their alleged employer. They argue, however, that they have also put forward allegations pertaining to the defendants collectively which are sufficient to support such an inference. I agree.

Plaintiffs' theory is that the defendants were "joint employers" of some or all of the plaintiffs. The complaint alleges that "defendants," by which they mean all defendants, including Sun Coast, HP, and Louis Berger, did the following:

- Shared supervision and control of plaintiffs' work schedules, (2AC ¶ 69 (alleged upon "information and belief"));
- Determined the rate and method of plaintiffs' pay, (*id.* (alleged upon "information and belief"));
- Jointly maintained employment records for work performed under the governmental programs for plaintiffs, (*id.* (alleged upon "information and belief"));
- Retained authority to hire and fire plaintiffs, (*id.* ¶ 76);

---

[8]     As for Mr. Rodriguez-Ortiz, HP claims that his allegations of employment are all conclusory and that the complaint never states directly that HP actually supervised him or directed the conditions of his employment. The only specific reference to Mr. Rodriguez-Ortiz's relationship to HP is in paragraphs 14 and 15 of the complaint, which state that he "worked for Louis Berger through H.P. Services," and that he "would deliver generators and heavy equipment for the worksites of the Defendants." (*Id.* ¶¶ 14–15.)

- Controlled all aspects of plaintiffs' work and job activities, (*id.*);
- Issued pay to the plaintiffs, (*id.*);
- Supervised, controlled, and directed plaintiffs, (*id.*);
- Set plaintiffs' rates of pay, (*id.* ¶¶ 77, 78);
- Set plaintiffs' schedule, (*id.* ¶ 77);
- Prohibited plaintiffs from working other jobs for other companies while working for defendants, (*id.*);
- Ordered the hours and locations plaintiffs and the putative class members worked, tools used, and rates of pay received, (*id.* ¶ 78);
- Provided building supplies, tools, or equipment for plaintiffs, (*id.* ¶ 81); and
- Set the qualifications for the plaintiffs' positions, (*id.* ¶ 82).

Defendants assert that these allegations are insufficient for two principal reasons: (a) they constitute group pleading, and (b) in some instances are alleged only on information and belief.

From the collective allegations, defendants say, "it is impossible to determine to which Defendant (or combination of Defendants) Plaintiffs refer and whether there is any connection between a particular named Plaintiff and Sun Coast." (DE 270 at 8–9 (Suncoast); *see also* DE 290 at 14–15 (HP) ("Plaintiffs make nothing beyond conclusory allegations as to all Plaintiffs and all Defendants in their attempt to make a prima facie employment relationship between Plaintiffs and H.P. Services.").

An allegation referring to more than one defendant is permissible,[9] but there are some limits. When those limits are exceeded, courts may reject such

---

[9] While I note that courts in this district have concluded that "group pleadings are improper," *Green v. 712 Broadway, LLC*, 2018 WL 2754075 at *3 (D.N.J. June 8, 2018), it is clear those opinions meant only to rule out collective allegations which make it indecipherable "what each particular defendant is alleged to have done." *Id.* (quoting *Ingris v. Borough of Caldwell*, 2015 WL 3613499 at *5 (D.N.J. June 9, 2015); *see also Sheeran v. Blyth Shipholding S.A.*, 2015 WL 9048979 at *3 (D.N.J. Dec. 16, 2015) ("group pleading" fails Rule 8 where it "does not place Defendants on notice of the claims against each of them."); *H2O Plus, LLC v. Arch Personal Care Prods., L.P.*,

"shotgun pleading." *Bartol v. Barrowclough*, 251 F. Supp. 3d 855 (E.D. Pa. 2017); *Weiland v. Palm Beach County Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015); *Whitehurst v. G & A Rest. Mgmt.*, 2020 WL 2062462 at *2 (M.D. Fla. Apr. 29, 2020). The touchstone inquiry is whether the pleading as a result "fail[s] to one degree or another . . . to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* (quoting *Weiland*, 792 F.3d at 1323); *Ingris*, 2015 WL 3613499 at *5; *Sheeran*, 2015 WL 9048979 at *3. For example, a complaint may be dismissed where it "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against." *Bartol*, 251 F. Supp. 3d at 859 (quoting *Weiland*, 792 F.3d at 1321–23).

In *Bartol* the court rejected a complaint which, in blanket fashion, asserted a § 1983 claim in thirteen counts against seven defendants, many of whom were not present during the events which formed the basis for the claim and who seemed to have had no interaction with the plaintiff at all. *Id.* at 860. The court concluded that it was "far from clear against which defendants many of the claims are brought" and noted that the plaintiff had failed to define who he meant by "individual defendants" but had directed some counts solely against said individuals. *Id.*

The permissibility of collective allegation varies with the cause of action asserted. Section 1983 cases such as *Bartol*, for instance, are particularly inhospitable to collective allegations because "a § 1983 action must allege personal involvement, and because liability based upon *respondeat superior* is impermissible"; thus a complaint must generally "state the conduct, time, place, and persons responsible for each claim." *Boone v. Salameh*, 2012 WL

---

2011 WL 2038775 at *2 (D.N.J. May 22, 2011) (group pleadings did not violate Rule 8 where plaintiff clarified which claims were against which defendant in attached exhibits). As *Thompson* makes clear, *see infra*, group pleadings plainly are permissible in a proper case.

143555 at 4–5 (W.D. Pa. Mar. 28, 2012) (rejecting allegations which failed to specify how each individual defendant violated plaintiff's constitutional rights but instead "lump[ed] all three defendants together and state[d] that they collectively failed to 'safeguard' his medical care"). In other kinds of cases—even those subject to the heightened standard for pleading fraud under Rule 9(b)—collective allegations are more appropriate. *See Ponzio v. Mercedes-Benz USA, LLC*, 2020 WL 1183733 at *17 (D.N.J. Mar. 11, 2020) ("If a relator 'has pled some evidence that each [defendant] had some role in the alleged scheme,' he is 'not required to allege more specific proofs'") (quoting *Negron v. Progressive Casualty Ins. Co.*, 2016 WL 796888 at *10 (D.N.J. Mar. 1, 2016)); *see also In re Volkswagen Timing Chain Prod. Liab. Litig.*, 2017 WL 1902160 at *9 (D.N.J. May 8, 2017) (collective allegations against "defendants" permissible where plaintiff adequately alleged that the defendants were intertwined in a corporate structure and the extent to which each were involved in the case was unclear); *see also Federman*, 2014 WL 12774688 at *7 (citing *Davis*, 765 F.3d at 242–43) (Third Circuit has opted for a "middle-ground approach" to specificity of FLSA pleading, requiring only a general allegation that the plaintiff typically worked more than forty hours over a typical workweek and leaving the rest to discovery).

I conclude that group pleading is permissible to some extent in FLSA cases. *Thompson v. Real Estate Mortg. Network* is instructive. 748 F.3d 142 (3d Cir. 2014). There, the plaintiff asserted FLSA violations by the defendants. The complaint alleged specific date ranges during which each defendant employed her, and alleged that that two individual defendants together made all decisions regarding the company's day-to-day operations, hiring, and firing. (Amended Complaint, DE 25, *Thompson v. Real Estate Mortg. Network, Inc.*, Case No. 11-cv-1494 (DMC-JAD) (D.N.J. Jan. 26, 2012) ¶¶ 6–7, 26.) Apart from those allegations, the complaint was directed almost entirely against the defendants collectively: plaintiff alleged that the defendants directed her work activity, controlled the terms and conditions of her employment, failed to

10

compensate her for overtime pay, permitted her to work over forty hours a week, misrepresented to her that she was not entitled to overtime pay, and misclassified her as exempt from overtime pay. (*Id.* ¶¶ 4, 15, 34, 45–46, 59, 70.)

The defendants in *Thompson* argued that those allegations improperly "group[ed] all defendants—individual and corporate—together and fail[ed] to differentiate between them as to alleged wrongful conduct." 748 F.3d at 148. The Court disagreed, concluding that the pleadings "put the corporate defendants on fair notice" of the allegations against them. *Id.*

Similarly, in *Whitehurst*, the plaintiffs asserted a single overtime claim against three separate defendants, claiming that they all had participated in the acts giving rise to the plaintiffs' FLSA claim. 2020 WL 2062462 at *2. The court, noting that the defendants "neither assert that they lack adequate notice of the claims against them, nor that they cannot respond to the complaint," permitted the collective allegations. *Id.* The court reasoned that the complaint "can be fairly read to aver that all defendants are responsible for the alleged conduct," and it was "possible each Defendant could have engaged in all the acts Plaintiff alleges to have violated the FLSA." *Id.*; *see also Crowe v. Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) ("When multiple defendants are named in a complaint, the allegations can and usually are to be read in such a way that each defendant is having the allegation made about him individually.").

Thus, collective allegations are very far from categorically impermissible in an FLSA case, and may contribute to a properly pled case. The court must assess overall whether the allegations adequately set forth a cause of action and place the defendants on notice. Here, I find that the collective allegations in plaintiffs' complaint, along with the individualized allegations regarding Mr. Burgos-Torres's position with Sun Coast, are adequate. As stated above, they state the required elements of an FLSA claim. The collective allegations make clear that Sun Coast, jointly with the other defendants, had the authority to hire and fire Mr. Burgos-Torres, control his work and job activities, issue his

pay, supervise and control him, set the rate of his pay, set his schedule, and order the hours and locations that he worked, and that Sun Coast occasionally provided supplies, tools, and equipment for his use. (2AC at ¶¶ 76–82.) In particular, the complaint makes clear that Mr. Torres worked for Sun Coast from November 2017 to August 2018 as a driver and diesel assistant and guided Sun Coast drivers by GPS. (*Id.* ¶ 26.) These allegations are sufficient to plead the employer-employee relationship set out in *Enterprise.*

It is true that this case is distinct from *Whitehurst* in that it is not "possible each Defendant could have engaged in all the acts Plaintiff alleges to have violated the FLSA." *Id.* at 5–6. When Mr. Burgos-Torres alleges, for instance, that he "worked for Defendants in Puerto Rico," he plainly is not referring to every defendant; indeed, he offers no indication that he worked for, say, defendant HP. (2AC ¶ 26.) The same is true of the allegations that "defendants" retained the authority to hire or fire him; it does not appear that he claims that defendant HP, for example, retained that authority. (*Id.* ¶ 76.)

Still, the allegations are clear enough, and further clarity should quickly emerge in discovery. For example, in the same paragraph where Mr. Burgos-Torres alleges that he worked for "defendants," he specifies that he worked for defendants Kallberg, Kennett, Sun Coast, and Louis Berger. (*Id.* ¶ 26.) The allegations that "defendants" retained the authority to hire or fire him thus can be read as alleging that those defendants—not the others—retained that authority with respect to Mr. Burgos-Torres. The plaintiffs' definition of the term "Defendants" to include each alleged employer (DE 235 ¶ 1) may be inapt, but it does not appear to have prevented particular defendants from identifying the allegations against them.

Now, the complaint surely could have been more precise. Nevertheless, there is no particular mystery; the allegations pertaining to SunCoast are those brought by Mr. Burgos-Torres. SunCoast's professions of bewilderment are

therefore somewhat hyperbolic. (DE 270 at 8–9); *see also Whitehurst*, 2020 WL 2062462 at *2.[10]

The plaintiffs have alleged clearly enough "who actually hired them, who set their schedules, who paid them, and who was involved in their day-to-day supervision." (DE 320 at 17 (citing *McDermott v. Clondalkin Gr., Inc.*, 649 Fed. Appx. 263, 267–68 (3d Cir. 2016); *see also* 2AC ¶¶ 69–82.) I do not find these assertions to constitute no more than "groundless belief," or to be supported solely by "conclusory allegations" (DE 320 at 18); to the contrary, plaintiffs make clear who they claim served as their supervisor and paid them, and they attach contracts showing that these defendants were in fact responsible for doing so. (*See, e.g.*, DE 298-1 at 10.)

That is how this case differs from the district court decision in *Thompson v. Real Estate Mortgage Network, Inc.*, 2011 WL 6935312 (D.N.J. Dec. 30, 2011)[11] cited by Sun Coast, where the court faulted the plaintiff's original complaint. That complaint, the court held, "addresse[d] [plaintiff's] claims to Defendants collectively without specifically alleging any employment relationship with each," because all she did was state that she was employed by the defendants within a particular date range without alleging facts indicating that they were her employers. *Id.* at *3; *see also DiFlavis v. Choice Hotels International, Inc.*, 2019 WL 1505860 at *5 (E.D. Pa. Apr. 5, 2019). Mr. Burgos-Torres plainly alleges that he worked for Kallberg, Kennett, Sun Coast, and Louis Berger, and Mr. Rodriguez-Ortiz plainly alleges that he worked for HP and Louis Berger. Each then alleges that those defendants jointly exercised

---

[10]   Similarly, plaintiff Jose Rodriguez-Ortiz makes clear that he "worked for Louis Berger through H.P. Services." (2AC ¶ 14.) The collective allegations against "defendants," should be read, at least in HP's case, as being those asserted by plaintiff Rodriguez-Ortiz against HP and Louis Berger.

[11] Above I discussed the Third Circuit's decision in the same case. That Court of Appeals decision, however, concerned a version of the complaint different from the one discussed in the district court decision cited here. (*Compare* Complaint, DE 1, *Thompson*, Case No. 11-cv-1494 (complaint addressed by district court decision), *with id.* DE 25 (amended version of complaint addressed by Third Circuit).)

the type of authority over them which would indicate that they were his employers, including controlling the activities he performed on the job, having the authority to hire and fire him, and so on. (2AC ¶¶ 69–82.)

Similarly, in *Davis v. Abington Memorial Hospital* and *Attanasio*, relied on by Sun Coast, no plaintiff picked out any particular employer/defendant from among an enormous number of alleged employers, and the court concluded that this went too far, even though "each employer would be liable to a member of the collective class." 2011 WL 5008363 at *5–6 (citing *Abington*, 2011 WL 4018106 at *3). Here, plaintiffs identify which defendants were their employers, and then plead additional information which renders their claims plausible enough to satisfy *Twombly* and *Iqbal* by identifying specific powers and authorities wielded by the defendants. (2AC ¶¶ 69–82.)

My conclusion does not ultimately depend on, but is buttressed by, the allegations premised "upon information and belief" in paragraph 69 of the Second Amended Complaint. Those allegations support a finding that the defendants jointly employed the plaintiffs by sharing supervision and control of Plaintiffs' work schedules, determining the rate and method of Plaintiffs' pay, and jointly maintaining employment records for work performed under the governmental programs for plaintiffs. (2AC ¶ 69.) Such allegations upon information and belief, though probably insufficient on their own, add support to the plaintiffs' other factual allegations. *See McDermott v. Clondalkin Grp., Inc.*, 649 Fed. Appx. 263, 267–68 (3d Cir. 2016) ("This Court has explained that pleading upon information and belief is permissible . . . so long as . . . '[p]laintiffs accompany their legal theory with factual allegations that make their theoretically viable claim plausible.'") (quoting *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002)). In that respect, this case differs from *Weigang Wang v. Saker ShopRites, Inc.*, 2017 WL 380911 at *4–5 (D.N.J. Jan. 26, 2017), where all of the plaintiffs' allegations related to the employer-employee relationship were based on information and belief and there were no other supporting allegations.

14

I thus conclude that each of these plaintiffs has adequately pled a claim under the FLSA. Additionally, I agree with the parties that plaintiffs' allegations under the Virgin Islands Code Wage and Hour Laws and Regulations (24 V.I.C. § 20) and Puerto Rico's Wage and Hour Laws (P.R. Laws Ann. Tit. 29 §§ 271 *et seq.* ("Law 379") are subject to the same standard as their FLSA claims (12(b)(6) Mot. at 16; 12(b)(6) Opp. at 12); *Del Valle v. OfficeMax N. Am., Inc.*, 2015 WL 222582 at *12 (D.V.I. Jan. 14, 2015); *Perez-Maspons v. Stewart Title P.R., Inc.*, 208 F. Supp. 3d 401, 424 (D.P.R. 2016). Those claims under Virgin Islands and Puerto Rico law are therefore adequately pled as well.

I therefore **DENY** the Rule 12(b)(6) motions (DE 253, 290) to dismiss the Second Amended Complaint for failure to state a claim.

### B. Motions of HP, Bluesource, LMD, and Kallberg to Dismiss for Lack of Personal Jurisdiction

### i.    Background

Bluesource, LMD, HP, and Kallberg (the "HLKB defendants") move to dismiss on the ground that I lack personal jurisdiction over them. (DE 257; DE 259; DE 264; DE 290.) I agree and **GRANT** these Rule 12(b)(1) motions to dismiss the Second Amended Complaint.

Plaintiffs are residents of Puerto Rico, (2AC ¶¶ 8, 13, 18, 22, 25, 29, 33), who performed work for subcontractors of Defendant Louis Berger, a corporation with a headquarters in New Jersey, (*Id.* ¶ 7.) Four of those subcontractors move to dismiss. The first movant/subcontractor, defendant Kallberg, is a Florida limited liability company with a principal place of business in Florida, (2AC ¶ 45; DE 250-1 at 2); the second, defendant LMD, is a South Carolina LLC with its principal place of business in South Carolina (DE 252-1);[12] the third, defendant Bluesource, is a North Carolina corporation

---

[12] Although plaintiffs assert in their complaint that LMD is "authorized to do business in New Jersey," is it unclear what they mean by that. They do not dispute that LMD does not maintain any property in New Jersey, has no office there, has never been licensed to work there, and has never sought a certificate of authority from the

with its principal place of business in Durham North Carolina, (DE 137-1 ¶ 3);[13] and the fourth, HP, is a Puerto Rican corporation, (DE 290-3 at 1).

As noted above, plaintiffs were hired to provide aid and perform repairs in Puerto Rico and the Virgin Islands following Hurricanes Irma and Maria. (2AC ¶ 66.) Louis Berger was awarded multiple contracts for power generation and repair in support of FEMA, the U.S. Army Corps of Engineers, U.S. Postal Service, and the Defense Logistics Agency. (*Id.* ¶ 68.) Louis Berger subcontracted its obligations to the other defendants and allegedly shared supervision and control of the plaintiffs' work schedules, rate of pay, method of payment, and employment records. (*Id.* ¶ 69.) The defendants allegedly misclassified the plaintiffs as independent contractors. (*Id.* ¶ 71.)

All of the relevant aid and repair work, carried out by the plaintiffs between September 2017 and November 2018, occurred in Puerto Rico. (*Id.* ¶¶ 74–85.) Plaintiffs assert, however, that the HLKD defendants have contacts with New Jersey which are significant enough to permit this court to assert personal jurisdiction over them in connection with these claims.

For each HLKB defendant, the primary alleged contact is the subcontract between itself and Louis Berger, a New Jersey entity, for the work performed in Puerto Rico. Those subcontractor agreements, which are similar, impose obligations as follows:

- The HLKB defendants agree to perform services for Louis Berger pursuant to task orders; (DE 257-3 at 2 (Bluesource); DE 259-1 (LMD); DE 264-1 (Kallberg)); DE 298-1 (HP);

- Louis Berger retains the right to inspect and evaluate the HLKB defendants' work, (*see, e.g.*, DE 257-3 at 3; DE 264-1

New Jersey state government to do business in the jurisdiction. (Decl. of Derry ¶ 3 (DE 252-2).)

[13] The complaint asserts that Bluesource is a Delaware corporation (2AC ¶ 46), but Bluesource states in a declaration that it is incorporated in North Carolina. Presumably Bluesource is correct, but I need not resolve the matter; in any case, it is not a corporation of the State of New Jersey, which is the point for this motion.

at Exh. 1 (right to inspect Kallberg's work imposed by individual task order rather than via a provision in the master contract); DE 298-1 at 3);

- the HLKB defendants are obligated to provide all supervision, labor, materials, tools, equipment, and subcontracted items unless otherwise stipulated, (*see, e.g.,* DE 257-3 at 3; DE 298-1 at 3; DE 264-1 at Exh. 1);

- the HLKB defendants are obligated to submit invoices for progress payments or completion of the work, (DE 257-3 at 5; DE 298-1 at 5; DE 264-1 Exh. A, Attachment 1);

- Louis Berger's representative is to be on site during various stages of the work to observe progress and quality, (DE 257-3 at 6; DE 298-1 at 6 (not present in Kallberg contract));

- Louis Berger has the authority to order the HLKB defendants to suspend work, (DE 257-3 at 9); and

- The HLKB defendants are "fully responsible for [their] personnel and the payment of all salaries, allowances, benefits, and taxes as required under all applicable laws," (*id.* at 10; 264-1 at 6–7; DE 298-1 at 10.)

The contracts additionally require the HLKB defendants to submit invoices to Louis Berger with "all supporting documents, including but not limited to time sheets, receipts and vouchers." (*See, e.g.,* DE 257-3 at 26 (Exh. 3 to contract).)

Plaintiffs enumerate additional contacts between the HLKB defendants and New Jersey which stemmed from their obligations under the contracts, including the following:

- approximately a year of continuous task orders, communications, and payments between the companies, as well as emails regarding the contracts, (DE 257 at 4, 7; DE 259 at 4, 6; DE 264 at 5–6; DE 298 at 7);

- the submission of hundreds of invoices into New Jersey for review by Louis Berger personnel which identified the labor rate at issue in the litigation and stated the hours worked and tasks performed by the plaintiffs and which the HLKB defendants knew were being processed in New Jersey, (DE 257 at 8; DE 259 at 7; DE 264 at 7–8; DE 298 at 6–7);

- communications with Raul Rosa, a Louis Berger employee who approved submitted invoices and whose signature block indicated that he worked in New Jersey, (DE 257 at 10; DE 259 at 10; DE 264 at 7), as well as with Shannon Foster, a Louis Berger employee who worked in Public Assistance Project Officer Disaster Management Services, whose email signature line indicated that she works in New Jersey (DE 298 at 7–8);

- the payment of millions of dollars by Louis Berger to the HLKB defendants for work performed under the contracts, (*See, e.g.*, DE 257 at 4; DE 264 at 6; DE 298 at 11.)

The contracts acknowledged that Louis Berger was based in New Jersey. (DE 257 at 10, DE 259 at 7; DE 264 at 6.) Plaintiffs assert that Bluesource initiated contact with Louis Berger about entering into the contract. (DE 257 at 7.) They also note Kallberg hired a CPA in New Jersey to assist it in receiving payment under the contracts. (DE 264 at 10.) Finally, they claim that LMD's president met with Mr. Rosa in Puerto Rico, and cite an email from LMD to Louis Berger which they claim "ask[s] for help in making payroll" for workers. (DE 259 at 12; *see also id.* at DE 259-4, -5 (Exh. D, E).)

### ii.   Standard of Review

A district court undertakes a two-step inquiry to assess whether it has personal jurisdiction over a party. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*

Second, "the court must apply the precepts of the Due Process Clause of the [federal] Constitution." *Id.* Here, the first step collapses into the second, because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two kinds of personal jurisdiction: general and specific. Specific jurisdiction relies on the corporate defendant's forum-related activities that give rise to the plaintiffs' claims, while general jurisdiction applies where the defendant corporation's contacts with the forum are sufficient to render it "at home" in the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 & n.8 (1984).

A plaintiff bears the burden of establishing sufficient facts to show that either general or specific jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2001). While the Court initially will "take the allegations of the complaint as true," *Dayhoff Inc. v. H.J. Heinz Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996), "once a defendant raises a jurisdictional defense, 'a plaintiff bears the burden of proving by affidavits or other competent evidence that jurisdiction is proper.'" *MaxLite, Inc. v. ATG Elecs., Inc.*, 193 F. Supp. 3d 371, 382 (D.N.J. 2016) (quoting *Dayhoff Inc.*, 86 F.3d at 1302); *see also Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). While at the pleading stage a court must accept the plaintiff's allegations as true and construe disputed facts in the plaintiff's favor, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), ultimately the court must determine whether the facts, and not merely plaintiff's allegations, justify finding jurisdiction.

*Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("Once [a] motion [to dismiss for lack of personal jurisdiction] is made, plaintiff must respond with actual proofs, not mere allegations.") (quoting *Time Share Vacation Club*, 735 F.2d at 67 n.9). Judge Clark ordered jurisdictional discovery in this matter, (DE 102, 210), so plaintiffs are obligated to establish jurisdiction with factual evidence. *Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 387 (D. Del. 2012); *Ispec, Inc. v. Tex R.L. Indus. Co.*, 2013 WL 5436538 at *2 (D.N.J. Sept. 27, 2013).

### iii.   Application of standard

Plaintiffs do not claim that the Court has general jurisdiction over Bluesource, Kallberg, HP, or LMD. Given that each of those HLKB defendants is incorporated outside of New Jersey and has its principal place of business outside New Jersey, the concession appears apt, and I will not discuss general jurisdiction any further.

In considering specific jurisdiction, it is important to focus on the nature of the dispute. If Louis Berger, a New Jersey company, brought an action against these non-New Jersey HLKB defendants for injuries arising from their contracts, this Court could very likely assert personal jurisdiction. Likewise, these Puerto Rico plaintiffs might well be able to hale these HLKB defendants into a Puerto Rico court to litigate a claim based on plaintiffs' employment in Puerto Rico. But those cases are not this one. This case is brought in New Jersey by residents of Puerto Rico, based on their employment in Puerto Rico, against non-New Jersey defendants. And the minimum contacts alleged are contacts, not between the HLKB defendants and the plaintiffs in Puerto Rico, but rather between the HLKB defendants and Louis Berger.

The Third Circuit has set forth a 3-part inquiry for establishing specific jurisdiction: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation "arises out of or relates to" at least one of those contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane*

*Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). The defendants surely directed activities towards New Jersey vis-à-vis Louis Berger; they contracted with Louis Berger and continued to implement those agreements over the course of months and years. This litigation, however, does not "arise out of or relate to" those contacts with this state, because the agreements between Louis Berger and the HLKB defendants are not sufficiently related to this litigation.

The Supreme Court recently clarified the "arise out of or relates to" requirement in *Bristol-Myers Squibb Co. v. Superior Court*. There, it held that "specific jurisdiction is confined to adjudication of issues deriving from, or connected with, *the very controversy that establishes jurisdiction*." 137 S. Ct. 1773, 1780 (2017) (emphasis added; quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). "In order for a court to exercise specific jurisdiction over a claim, there must be an 'affiliation between the forum and the underlying controversy, *principally, [an] activity or occurrence that takes place in the forum state*." *Id.* at 1781 (emphasis added; quoting *Goodyear*, 564 U.S. at 919). "When there is no such connection, specific jurisdiction is lacking regardless of a defendant's unconnected activities in the state." *Id.* (quoting *Goodyear*, 564 U.S. at 931 n.6). Where a business's contacts with a state are not sufficiently to the claims at issue, they are irrelevant to specific jurisdiction; the Supreme Court emphasized that there are two categories of jurisdiction, not three, and expressly disapproved of using such contacts to create a "loose and spurious form of general jurisdiction." *Id.* at 1781.

In *Bristol-Myers*, plaintiffs sued Bristol-Myers Squibb for injuries allegedly caused by a drug called Plavix. *Id.* at 1777. The defendant was a large pharmaceutical company incorporated in Delaware and headquartered in New York, with substantial operations in New York and New Jersey. *Id.* at 1777–78. It also engaged in business activities in other jurisdictions, including in California, where it employed sales representatives and maintained some research laboratories. *Id.* at 1778. Plavix was developed in New York and New

Jersey, which is also where the defendant developed its marketing strategy for the drug and manufactured, labeled, and packaged the drug. *Id.* at 1778.

The crucial aspect of the decision regarded the plaintiff's assertions that Bristol-Myers Squibb was subject to personal jurisdiction in California because it had contracted with McKesson, a California company, to distribute Plavix nationally. *Id.* at 1783. The court rejected that claim. While the contract with McKesson related to Plavix, it did not involve the liability-creating facts, such as the pharmacological development of Plavix, Bristol-Myers Squibb's marketing strategy for the drug, or the manufacturing, labeling, or packaging of the drug. *Id.* The Court concluded that "the bare fact that BMS contracted with a California distributor is not enough to establish personal jurisdiction in the State." *Id.*

Under *Bristol-Myers,* it is not enough that a defendant's contacts with a forum relate to the same general subject matter as the claim. The Court required a tighter connection between the elements of the claim and the connections to the forum state. *See also O'Connor*, 496 F.3d at 323 (valid exercise of personal jurisdiction requires a "meaningful link exists between a legal obligation that arose in the forum and the substance of the plaintiffs' claim"). Nor is it sufficient that there be a "but-for" relationship between the contacts and the claims; that "ensur[es] the existence of some minimal link" and thus is a "useful starting point," but a stronger connection is required to meet the test of relatedness. *River v. Bally's Park Place, Inc.,* 798 F. Supp. 2d 611, 617 (E.D. Pa. at 2011) (quoting *O'Connor,* 496 F.3d at 322); *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 575 (1985) ("This 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . .").

I find helpful a comparison to *Hickman v. TL Transportation, LLC*, an FLSA action in which the defendants' contacts were found to be sufficient. 317 F. Supp. 3d 890 (E.D. Pa. 2018). *Hickman* was a suit by delivery drivers claiming they were entitled to overtime pay. The drivers brought suit against

two individual defendants: the owner (Foreman) and the president of the delivery company (Lowe). *Id.* at 892. The plaintiffs had worked out of an Amazon warehouse in King of Prussia, Pennsylvania (the forum state). The individual defendants ran the company out of Maryland, although it had locations in Virginia and New Jersey, in addition to the Pennsylvania location at which they provided delivery services for Amazon. *Id.* The defendants claimed Pennsylvania courts had no jurisdiction over them because they had set a companywide pay policy well before they had even opened the Pennsylvania operation, and had made all business decisions regarding payroll, human resources, and management decisions, in Maryland. *Id.*

The court concluded otherwise. First, it considered defendant Foreman. Foreman, it found, had traveled into Pennsylvania at least twenty times over the relevant period, often engaging in workforce management, including interviewing applicants for positions in King of Prussia and negotiating pay with those applicants, and overseeing daily operations at the King of Prussia facility and meeting with management. *Id.* at 894–95. The court also noted that Foreman had oversight duties over managers who ran the King of Prussia location and set schedules and hours for delivery associates. *Id.* These contacts, the court held, were "related to" the plaintiffs' claims because Foreman had on-site involvement in establishing the King of Prussia facility, and because Foreman's regular role overseeing managers who set the plaintiffs' schedules and hours meant that he supervised the very conduct in Pennsylvania which gave rise to the plaintiff's claims. *Id.* at 895.

As for defendant Lowe, the court found the question to be closer, but nevertheless found jurisdiction. It noted that Lowe had traveled to Pennsylvania twice, once to interview a prospective safety consultant and once to interview potential drivers. *Id.* at 897. Lowe was present when a prospective safety consultant gave a presentation to drivers in the King of Prussia location, in which the consultant "[went] over safety tips" with drivers and discussed driver safety. *Id.* This, the court concluded, was related to plaintiffs' claims

23

because Lowe had gone to the King of Prussia location to further the company's expansion into Pennsylvania, improve workplace conditions at King of Prussia, and produce long lasting improvements in the company's performance there. *Id.* at 897–98. The court also noted that while Lowe had interviewed drivers for positions in a Swedesboro, New Jersey location, those drivers were transferred to the King of Prussia location after the Swedesboro location was shuttered, and the interviews took place in Philadelphia. *Id.* at 898. The court reasoned that though the employees were hired to work in nearby Swedesboro, the hiring was part of an effort to further the expansion of the company's workforce into the Philadelphia metropolitan region. *Id.* Finally, Lowe had promulgated the pay rate for delivery associates; though he set the policy before opening the Pennsylvania location, he directed that policy into the state by opening that additional location. *Id.*

*Hickman* explains that in the FLSA context, *relevant* contacts include, among other things, oversight of employees, especially regarding hours or work conditions, decision-making regarding payroll or work conditions, hiring of workers for the location, or involvement in establishing the location where the plaintiff worked—in short, the hours and conditions of work that lay at the heart of the FLSA claim itself. It did not, however, find jurisdiction based on the mere existence of an underlying employment contract, as plaintiffs urge here. Foreman and Lowe, as it happens, secured a contract with Amazon to provide services out of an Amazon warehouse in Pennsylvania, *id.* at 892, and the employees in question were hired pursuant to that contract. The contract, however, did not even register in the analysis of the court.

The *Hickman* facts, moreover, are quite distinguishable. They would be more analogous to a suit brought by Plaintiffs in a forum in Puerto Rico, the locus of the employment and the conduct of which they complain.

More broadly, *Hickman* is consistent with numerous holdings that a contract with a party in the forum is not sufficient to confer jurisdiction, even if the contract is a but-for precondition of the ultimate controversy. That is

especially true where the cause of action is not one between the parties to that contract, for breach of that contract. *See, e.g.*, *Kurzweil v. Amtrak*, 2020 WL 5760423 (D.N.J. Sept. 28, 2020) (Amtrak not subject to specific jurisdiction in New Jersey for slip and fall in Washington D.C. merely because plaintiff purchased ticket in New Jersey, although jurisdiction would have existed for a breach of contract claim); *Colony Nat. Ins. Co. v. DeAngelo Bros., Inc.* 2015 WL 390916 (M.D. Pa. Jan. 28, 2015) (railroad entered into $5 million contract in which Pennsylvania company agreed to manage vegetation at railroad stop in Oklahoma; no personal jurisdiction in Pennsylvania for declaratory judgment suit seeking to adjudicate responsibility for wrongful death action based on accident in Oklahoma); *Horowitz v. AT&T Inc.*, 2018 WL 1942525 at *15–16 (D.N.J. Apr. 25, 2018) (no personal jurisdiction over suit for age discrimination against company with business location and employees in New Jersey because plaintiffs lived and worked for company in Arizona and Florida).[14]

The contracts between the HLKB defendants and Louis Berger are not sufficiently related to this controversy to justify the exercise of specific jurisdiction. The contracts govern the subcontractors' obligations in connection with fulfilling Louis Berger's contractual obligations to the federal government. They are not contracts between the HLKB defendants and the plaintiffs. They do not concern the hours, pay rates, or other terms of the plaintiffs' employment. Nor do they even define the plaintiffs' jobs, the duties of which were to be set out by subsequent task orders. (*See, e.g.*, DE 257-3 at 2.) The

---

[14] Indeed, a contract may not suffice to confer jurisdiction even where the claim is one for breach of that contract. As noted by HP in its Reply (DE 320 at 6–7), Judge Martinotti recently dismissed a claim for lack of personal jurisdiction in *G&C Fab-Con, LLC v. M&S Civil Consultants,, Inc.* where a New Jersey LLC sought to establish jurisdiction in New Jersey for a suit arising out of a contract between the plaintiff and a Colorado  corporation. 2021 WL 268177 at *1 (D.N.J. Jan. 27, 2021). The court found that the Coloradan was not subject to personal jurisdiction here despite having entered into the contract which gave rise to the claim with a New Jersey corporation because the contract was governed by Colorado law, all of the relevant work was performed in Colorado, the defendant had never maintained any business operations in New Jersey, and the plaintiff had solicited the contract in Colorado. *Id.* at *5.

contracts are a "but for" cause, in the sense that if they did not exist, there would have been no jobs for the plaintiffs to take. But they are no more than that. They do not relate directly to the FLSA violation that is the source of the claims here. The only arguable exception would be the contractual obligation to inspect the plaintiffs' work (DE 257-3 at 3), but the inspections, like the work, were to occur in Puerto Rico, not New Jersey. Ultimately, the contract does not set or implicate the terms of plaintiffs' employment which give rise to their claims here. The HLKB defendants' obligations under the FLSA are "entirely distinct from and involve[] different legal obligations and [here, at least] bind[] different parties" than those imposed by the contract between them and Louis Berger. *Colony*, 2015 WL 390916 at *8.

Plaintiffs' additional allegations regarding the amount of money paid under the contract, the amount of correspondence the HLKB defendants sent into New Jersey pursuant to the contract, and the submission of invoices pursuant to the contract, do not advance the case for specific jurisdiction. They concern matters between the HLKB defendants and Louis Berger, but do not relate directly to the plaintiffs' FLSA claims. Because the underlying contract is not sufficiently related to the cause of action, such actions taken pursuant to the contract are not sufficiently related, either. *See Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 153 (3d Cir. 1996) ("prior negotiations," "course of dealing," "future consequences," and "terms of the contract" only matter with regard to a "*disputed contract*, not dealings unrelated to the cause of action," which are "not relevant to specific jurisdiction"); *Williams v. Ying Zhou*, 2018 WL 648354 at *4–5 (D.N.J. Jan. 30, 2018) (contacts pertained to contract which formed basis of claim); *Kitchen & Assocs. Services, Inc. v. Haven Campus Communities*, 2019 WL 6606857 at *8

(D.N.J. Dec. 4, 2019). Thus, these contacts are not particularly relevant to the jurisdictional analysis.[15]

Plaintiffs further assert that the invoices submitted by the HLKB defendants to Louis Berger in New Jersey are relevant contacts, because the invoices contain information regarding the plaintiffs' wages and roles at work sites. That information, however, was included solely to substantiate the work done by the subcontractor/defendants for Louis Berger. (*See, e.g.,* DE 259-1 at 25 (Master Service Subcontract between LMD and Louis Berger requiring that LMD submit invoices containing time sheets, receipts and vouchers).) Those invoices did not control or affect the amounts paid, or not paid, to the plaintiffs for hours worked. Plaintiffs take out of context an email sent by LMD to Louis Berger stating that it needed to be paid in order to pay its employees; those emails regarded payments due to the defendants by Louis Berger under the contract; they were not requests for reimbursement or payment to LMD's employees. (cite (DE 259 at 9; *see also* 259-4 and -5).) Indeed, the contract specifies that "[LMD] shall be fully responsible for its personnel and the payment of all salaries, allowances, benefits, and taxes as required under all applicable laws." (DE 259-9 at 10.) That LMD pled hardship because it needed to pay its employees does not alter its obligations or the nature of the payments; it reflects only the innocuous reality that businesses often pay salaries out of current revenue.[16]

Finally, plaintiffs' reliance on *Chao v. Benitez Drywall, LLC,* 2007 WL 781760 (S.D. Tex. Mar. 12, 2007), is unwarranted. In that case, Benitez was a

---

[15] For the same reason, Bluesource's effort to initiate contact with Louis Berger about entering into the contract is not a relevant contact, nor is Kallberg's hiring of a CPA to assist it receiving payments under the contract.

[16] I do not consider the allegations of joint employment amongst the defendants for purposes of analyzing jurisdiction, as "joint employer theories and similar concepts are relevant for determining liability but are not for determining whether a court may exercise personal jurisdiction over a party." *Horowitz v. AT&T Inc.*, 2018 WL 1942525 at *7 (D.N.J. Apr. 25, 2018) (quoting *In re Enter. Rent-A-Car Wage & Hour Emp't Practices Litig.*, 735 F. Supp. 2d 277, 328 (W.D. Pa. 2010)).

Texas corporation that hired Texas workers and contracted them to other companies. *Id.* at *1. Benitez had entered a contract with a company called ICCI in which Benitez sent Texan workers to Mississippi to perform work for ICCI. *Id.* Benitez, however, failed to pay its workers overtime, and the Secretary of Labor brought a suit against it in Texas. *Id.* Benitez sought to implead ICCI, which countered with a motion to dismiss for lack of personal jurisdiction. *Id.* The court denied the motion, concluding that ICCI had entered into an agreement to hire Texan employees, had often contacted Benitez to request additional Texan employees, and that ICCI had consistently sent the employees' time sheets to Benitez in Texas. *Id.*

*Benitez* thus involves a completely different fact pattern than the one here. Texas, the forum, had jurisdiction over ICCI because ICCI had employed Texan workers and contracted with a Texan company to supply those workers. Here, New Jersey is the forum state. The LKD defendants did not hire New Jerseyans or contract with Louis Berger to do so. Instead, they agreed with Louis Berger to conduct work in Puerto Rico, with Puerto Rican workers. Furthermore, the contract between the LKD defendants and Louis Berger did not concern the provision of laborers.

For the foregoing reasons, I will **GRANT** the HLKB subcontractor defendants' motions to dismiss the Second Amended Complaint as against themselves for lack of personal jurisdiction. This order will, however, be stayed for 14 days. Within that period, the court will entertain a letter application in which plaintiffs may suggest a reasonable, practicable plan to sever and transfer venue of cases to a district or districts where personal jurisdiction can be asserted. (*See also* Subsection C, immediately following.)

### C. Plaintiffs' Motion to Transfer

Defendant Able, too, moves to dismiss the complaint for lack of personal jurisdiction. (DE 254) Plaintiffs do not oppose that motion, but instead have moved to transfer venue of the case against Able to a district that does possess jurisdiction. (DE 261) Able does not oppose that motion, which will be granted.

A Court that finds it lacks personal jurisdiction "shall, if it is in the interest of justice, transfer such action . . . to any other court . . . in which the action . . . could have been brought." 28 U.S.C. § 1631; *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 109 (3d Cir. 2009). The transferee court must have subject matter jurisdiction, venue, and personal jurisdiction. *Am. Fin. Res., Inc. v. Smouse*, 2018 WL 6839570 at *5 (D.N.J. Dec. 31, 2018). A district court which "lacks personal jurisdiction must at least consider a transfer." *Dansiger & De Llano, LLP v. Morgan Verkamp, LLC*, 948 F.3d 124, 131 (3d Cir. 2020).

Determining where the interest of justice lies is left to my discretion, *Philips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999); *Roberts v. United States*, 710 F. App'x 512, 514 (3d Cir. 2017) (per curiam). When jurisdiction is clearly available in another court, however, "[n]ormally transfer will be in the interest of justice because dismissal of an action that could be brought elsewhere is time-consuming and justice-defeating." *SM Fin. Servs. Corp. v. Blue Cross Blue Shield of Tex.*, 2020 WL 7869213 at *2 (D.N.J. July 16, 2020). Indeed, transfer often has the advantage over dismissal because it provides the benefit of maintaining continuity and avoiding litigation over whether the refiled action is time-barred. *Kim v. Korean Air Lines Co.*, 2021 WL 129083 at *9 (D.N.J. Jan. 14, 2021); *see also Kurzweil*, 2020 WL 5760423 at *4.

Plaintiffs here identify the Middle District of Florida, Orlando Division as an appropriate location for transfer. (DE 261 at 2.) Able was served with process at 898 Glendale Avenue NW, Palm Bay, Florida 32907, which is located in Brevard County, Florida and is served by the U.S. District Court for the Middle District of Florida. (*Id.*) Plaintiffs assert that location is Able's principal office, and Able does not contest that characterization. (*Id.*) I conclude that Able would be "at home" there, and would thus be subject to general jurisdiction at that location. *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). Venue would also be proper there, *see* 28 U.S.C. 1391(b)(1), because it appears that Able resides in that judicial district. Lastly, the Middle District of Florida would retain federal question jurisdiction over these FLSA claims under 28 U.S.C. §

1331. *See Growth Horizons, Inc. v. Delaware Cty.*, 983 F.2d 1277, 1281 (3d Cir. 1993) ("A district court has federal question jurisdiction in any case where a plaintiff with standing makes a non-frivolous allegation that he or she is entitled to relief because the defendant's conduct violated a federal statute.").

Plaintiffs raise the concern that if they were required to refile in Florida, they could lose out on a year's worth of wages. (DE 261 at 2.) I express no opinion as to whether that would be true, but the mere possibility of it arising as an issue weighs in favor of transfer, rather than dismissal. That is especially true when the defendants do not oppose transfer.

I therefore **GRANT** plaintiffs' motion to sever and transfer the case, insofar as it is brought against Able, to the U.S. District Court for the Middle District of Florida. This part of my ruling is likewise stayed for 14 days, during which plaintiffs may submit a letter application proposing a reasonable, practicable plan for severance in advance of transfer.

### III.   Conclusion

For the reasons set forth above, I will **DENY** the motions of Sun Coast and HP to dismiss for failure to state a claim, **GRANT** the HLKB defendants' motion to dismiss for lack of personal jurisdiction, and **GRANT** plaintiffs' motion to sever and transfer venue of the case against Able.

An appropriate order follows.

Dated: March 11, 2021

/s/ Kevin McNulty

_____

**Kevin McNulty**
**United States District Judge**

30